Good morning, everyone. Let's see, the first one, two, three, four cases on the docket for today are submitted. So we'll take up Mithong, correct my pronunciation, versus Bondi. Good morning, Your Honors, and may it please the Court. Nicholas Gonzalez from Ora-Carrington and Sutcliffe. I'm for Winter Counsel for Mr. Mithong. I'd like to reserve two minutes for rebuttal. Okay, watch your clock. CAP bars the United States from returning noncitizens to a country where they face a likelihood of torture. To implement that requirement, this Court has held that the agency must aggregate the risks underlying multiple theories to determine whether the applicant has met that more likely than not standard. The agency here failed to do that, analyzing Mr. Mithong's risks only in isolation. That is legal error, and the proper remedy in these circumstances is a remand. I'd like to first start with the legal error and then turn to the remedial question. So on the legal error, the government does not dispute here that Mr. Mithong presented multiple theories for why he might be tortured. The government also does not dispute that the agency here did not aggregate the risks from those theories. The government's only argument here today on the legal error is that the agency didn't need to aggregate because the aggregation rule applies only to cases – does not apply to cases involving government – only government-led torture. But what if we read the IJ's decision differently and concluded that there's four or five places where the immigration judge states the correct standard for cat relief, and then in the way his statements discuss each of the claims that Mr. Mithong makes, he was doing an aggregate analysis, even if the government agreed with you and you think they conceded that point. If we disagree, you think we're bound by that, by the concession? I think party representation principles would counsel against reaching out and presenting an argument that the government is not making here today. But I would also dispute that the agency aggregated here or that it applied the correct legal standard simply because the IJ invoked the more likely than not standard is not talismanic. The agency's analysis shows that rather than considering the aggregate risk of torture, the agency actually sliced and diced various iterations of Mr. Mithong's theories and determined that no risk in isolation was likely to lead to torture. Now, this court has upheld agency decisions that have correctly applied the aggregation rule, where the agency at the end says, for example, I've now considered the aggregate risks and I've determined that the more likely than not standard has not been satisfied. The IJ here never did that. The IJ instead said, this iteration of the theory is unlikely to transpire because no individual theory is likely to transpire. Therefore, the cap burden has not been met. So the IJ described each of the various theories as hypothetical or speculative. So it appeared that the immigration judge, in a pretty lengthy oral decision, was going through each of the various claims and saying, there's just no evidence to support this. This is hypothetical. So how do you go from 0 plus 0 plus 0 equals 51? This is not a 0 plus 0 plus 0 case. Far from saying that there were no risks, the IJ said that there's certainly potential danger in Cambodia at pages 80 to 81 of the record. The IJ recognized that Cambodia does not put up with political opposition, which the IJ said includes human rights reformers, which Mr. Mithong very recently constitutes one of those types of people. And the IJ also said that because there was insufficient evidence to support a more likely than not standard for the individual iterations of the theory that Mr. Mithong had not satisfied the cap burden. I would also note that the IJ cited a matter of JFF and said that that is for cases just like this one. But we know from Velasco-Semajoa that that's just wrong. Matter of JFF has extremely limited utility, which is why this court in Velasco-Semajoa cautioned against its use. It's for single chain events, single chain theories, and this is not a single chain case. So, I'm sorry, is your position that by citing Matter JFF, that means that we should conclude there was legal error just by the citation to that decision? Not at all, Your Honor. Had the IJ cited Matter of JFF, and then said that none of the theories were individually likely to transpire, and then at the end said, I've now considered the aggregate risks based on the risks underlying all of the theories, and I find that the more likely than not standard has not been met, this would be a very different case. The IJ never did that here. I think part of the language that's troubling to me in Velasco-Semajoa is that the court says the aggregate analysis and the rule articulated in JFF are logically consistent. So it seems that we couldn't base a finding of legal error based solely on that citation. We'd have to find something more. I understand your position is you think there's something more. It's exactly right. Simply citing Matter of JFF is not legal error per se. It's the fact that the IJ here not only cited Matter of JFF, it analyzed the risks exclusively in isolation, and it never considered the aggregate risk of torture. Now, Judge Beatty, I get the sense that you think that the IJ was saying that the risks were pretty low, and... Well, I don't think that the IJ assigned any sort of numerical value or did anything along those lines. It appeared that he was saying, I'm looking at each of these, and there's no evidence to support them. They're hypothetical. And I'm a little troubled by Arajeta-Martinez, I-R-A-H-E-T-A, I'm probably mispronouncing it, Arajeta-Martinez, which seems to be a case very similar to this one from 2021 from our court, where the court said, true enough, the BIA did not make it perfectly clear that it was performing an aggregate analysis, but on the balance, the BIA said enough to convince us that it did, in fact, find there was less than a 50% chance that Arajeta will be tortured by all potential sources of torture. So it seems to me that our precedent allows us to look at what the judge actually said, and even if he doesn't invoke some magical words, to see if there really was an aggregate analysis. Yeah, so what the IJ said is that Cambodia has a lot of human rights issues, but there's certainly potential danger in Cambodia, that Cambodia doesn't put up with political opposition, and that human rights reformers have their rights run roughshod over. And then the IJ discussed various ways in which Mr. Mee-Tong might be susceptible to torture. I don't entirely follow that, because the IJ says that we don't have anything other than human rights conditions in Cambodia generally with regard to political opposition, people, protesters, criminals, things of that nature, and responded at this point really doesn't fall into any of those categories. So I thought in your brief, so it seems to me he's saying there's kind of zero possibility there. In your brief, you focus on the fact that this fellow is a criminal, and the IJ said, I think he said that he wasn't a criminal, he hadn't committed any crimes in Cambodia. And I thought in your brief you were saying that he is a criminal, because he, as I understand it, he spent 29, is that incorrect? He spent 29 years in prison in this country. That's exactly right. He did spend 29 years in prison. And the IJ didn't take that into account at all. And that was what I thought you were arguing in your brief. So have I misread your brief on that point? No, that's further evidence that the IJ did not consider all of the risks underlying Mr. Mitong's overall risk of torture. That's just another example of the failure to arrogate, which is implementing the mandate under the regulations that the agency consider all of the evidence that could support a torture claim. Judge Beatty, if I could go back to Iroheta. The mere fact that the agency called the claims, described the chain here as hypothetical, only reflects that that is the nature of a CAT claim. It's about hypothetical risks that occur in the future. And merely expressing that individual risks are not, are perhaps speculative or generalized, that does not excuse arrogation. And we know that because this court in Park, which I know that Judge Beatty you're familiar with, and Andrade, when the agency there had said that the risks were speculative, and this court confronted whether the agency had to arrogate, this court still applied the argument that if individual risks are low, the aggregation rule still kicks in, because the fact that individual risks are low does not mean that torture is unlikely to transpire. They could additively lead to the 50% plus threshold being satisfied. And so that means that the agency still had to arrogate here, and there's nothing in the agency's decision that discloses that it aggregated the overall risk of torture, and that is legal error. On the remedial question, this court has been clear that when there is a legal error, this court has not then paged the record to determine whether substantial evidence nonetheless could support the agency's decision. The court said that in Singh versus Garland, and the Supreme Court has reiterated the remand rule in cases such as Calcutt and wages. So if we, I don't dispute what you're saying, yes, we would not do a substantial error analysis, but don't we apply a harmless error analysis? Yes, and the harmless error analysis, as Singh versus Garland explains, excuse me, asks whether a remand would be a useless and idle formality. Now, that is a standard that reflects that this court only denies a remand when there's an independent legal or factual basis that's free from error that logically compels the same conclusion on remand. But the legal error here, as I understand your argument, is that the immigration judge did not sufficiently articulate aggregation. So the immigration judge did list and explain the various theories at length, at least a paragraph or two of the written decision about each of the theories that the petitioner had advanced, and then said multiple times, I think five different times throughout his decision, stated the correct standard. So with that record, it seems that on remand, the immigration judge would do the same thing, reach the same conclusions. There's no newly discovered evidence. There's no intervening law. I'm having a hard time understanding why this wouldn't be futile. So the agency did not say that there were no risks. The agency also did not apply the correct standard. It may have invoked the CAT standard, but there's a difference between invoking it and applying it. And if you look at pages 80 to 81 of the record, the IJ repeatedly says, this risk is unlikely to transpire. This risk is unlikely to transpire. This risk is unlikely to transpire. Under matter of JFF, because no individual risk is likely to transpire, that means torture is unlikely to transpire. But that conflates the matter of JFF standard with the CAT standard. The CAT standard requires arrogation of all the risks to determine whether the more likely than not standard has been met. And if this court were to remand and instruct the agency to apply the arrogation rule, the entire tenor of the IJ's decision would change, because the IJ has to now consider all these risks in the arrogant, do they meet the more likely than not standard. There's nothing in the IJ's opinion that ever said that. And it's not so much a matter of like magic words. It's a matter of showing your work and saying, I've considered these arrogant risks, and the more likely than not standard hasn't been met. And the agency here failed to do that. I see that I'm running out of time, so if I could balance my time for rebuttal. You may. Thank you. Ms. Perlmutter. Good morning, Your Honors, and may it please the Court. Alexa Perlmutter on behalf of Respondent. After Petitioner, who has not been in Cambodia since 1979, testified to his fear of harm from the government, the immigration judge fully considered the potential harm from that one source. Looking to the record at page 81, the immigration judge specifically referenced the country conditions and found as a factual matter that Petitioner does not fall, quote, does not fall into any of these categories. He hasn't committed any crimes in Cambodia. He hasn't protested. He's not a member of the political opposition, end quote. The immigration judge was not then required to articulate a separate aggregation analysis regarding the specific reasons for the feared harm once the claim of feared harm by the government was fully considered. As Your Honor mentioned, these hypothetical examples were used as illustrations, which shows that the immigration judge was fully engaging with Petitioner's testimony and fully engaging with Petitioner's claim as he presented it. I'd encourage the Court to look to pages 131 to 133 of the record because it makes clear that the entirety of this claim was speculative. At the end of the day, Petitioner and his other two witnesses had not been in Cambodia for 50 years and were relying on their general fears, things they had read, and again, the immigration judge had the country conditions at his disposal. And the immigration judge reasonably referenced those hypothetical situations, but as Your Honor mentioned, we are now at a zero plus zero plus zero situation. And as this Court explained in Velazquez-Semilloa, referencing Medina-Rodriguez, there's no aggregation required when there's no evidence to support a specific theory. Well, I'm troubled by this. I understand your position that it's zero plus zero plus zero, but the IJ said, well, he hasn't committed any crimes in Cambodia. Therefore, he has a zero likelihood of being tortured as a criminal. And yet this guy is a criminal. He spent 29 years in prison. He's a murderer. And the IJ didn't deal with that at all. Yes, Your Honor. I think, first, it is undisputed. He has not committed any crimes in Cambodia. As for his criminal record in the United States, there's no evidence in the record that the American government shares that information with the Cambodian government. No, but the likelihood of somebody finding out that he spent 29 years in prison because he's not dealt with, and it seems to me, it's quite likely that somebody's going to find that out. Go ahead. I was just going to note that petitioner's own country conditions evidence on page 540 and 541 of the record states that deportees specifically from America who have criminal records then have a clean record in Cambodia. There's simply not evidence in the record to support a likelihood of torture based on for that reason. And this court would have to find evidence compelling that conclusion. Not if we find that the IJ applied the wrong legal standard, then we would just remand, as we're required to do under Ventura. You're saying that if we wanted to grant relief, we would have to say that. But I do find that lack of discussion of his criminal history in the United States somewhat troubling given that's an obvious basis for concluding that he would end up homeless or beat up or lacking adequate medical care or, you know, when you consider all of the characteristics of his plight as a whole, which the IJ did not do here. Your Honor, we would dispute that the IJ did not fully consider the claim. And with regard to, if that would be a legal error, that would be reviewed de novo. Although, if your Honor's suggestion is that it puts him at an increased risk of ending up in detention, we would then still need, you know, a more likelihood than not of torture in detention. And we simply don't have that. But the IJ just didn't deal with that. He didn't say that. He said, well, he's not going to be persecuted as a, criminal because he hasn't done anything in Cambodia. And you say, well, nobody would ever find out because he had no criminal record in Cambodia and there's evidence about that. But the IJ doesn't say that. And that seems kind of questionable. So that would, however, be a factual finding because that factual finding that he does not fit into these categories of at-risk individuals is a factual finding based on petitioner's characteristics. That would be separate. My understanding is that would be separate from this aggregation error that petitioner is claiming. But under Cruz and under Zamorano, which are decisions by this court in 2025 and 2024, the court has applied two legal errors of this sort. The harmless error rule, a species of the harmless error rule asking, is there material evidence in the record that would could potentially change the outcome of this case? So that is something that the court is empowered to do. The question in those cases were, was there evidence that could have materially affected the agency's decision or material enough to carry his burden? I don't think that's our harmless error rule in immigration. That's in criminal cases. But we've explained that when the agency commits legal error, we do not ignore the error to see if substantial evidence nevertheless supports the agency's determination. Why would we stray from that rule here? Well, in Cruz v. Bondi and Zamorano v. Garland, which were two cases considering CAC claims, this court found that petitioner had to point to this evidence in the record that could have materially affected his decision that they called that the taking due account of the rule of prejudicial error. Now, those were similar legal errors as to consideration of the record. We certainly understand, you know, your honors can, if you would prefer to remand this case, the government's position here is that if any error occurred, it was harmless based on this very speculative claim that petitioner has put forth. What we have at the end of the day is relying on the country conditions evidence to meet his burden. And looking to the country conditions evidence, which the immigration judge did fully consider, our position is that he has not met his burden here. The immigration judge fully considered torture, the risk of torture from the one source that he articulated, a fear. So, counsel, going back to the discussion of harmless error, can you point to a case that assume for a minute that I think that we find, even though it's, I don't know how we're going to end up with deciding this case, but assume we were to find aggregation analysis error, have, can you point to a case where in that situation, we nonetheless proceeded to a harmless error analysis and didn't remand to the BIA or the agency? Not in the aggregation context. Specifically, we're talking about the aggregation context here. So I think our law consistently says you remand to the agency for it to consider the correct application of the law in the first instance. And I don't think we've changed that rule. Yes, Your Honor. Pointing to Ira Hedda Martinez, this court still can deny the petition, even when the agency did not make it perfectly clear that it was performing an aggregation analysis. What do you mean perfectly clear? Those were the words of Ira Hedda Martinez. Those were, that was a quote from that case. If Your Honors believe that the agency, that the agency did not make it clear on the face of the record. Well, I think this case, I don't think, see any ambiguity in this case. He did not aggregate everything, including a major characteristic of the petitioner. His having spent 29 years in an American prison for a crime he committed at age 16. Your Honor, we submit that this sentence on page 81, he does not fall into any of these categories that make him high risk. That is holistically and fully considering the potential harm from the government. And if Your Honor believes that it was a factual error, that he does not fit into any of the high risk categories, that would be reviewed for substantial evidence. I do not see this sentence on page 81 to be any of the hypothetical illustrative examples regarding JFF that Your Honors were discussing previously. This sentence on page 81, our position is that this represents a full consideration. Which sentence, I'm sorry, which sentence on page 81 is the full analysis? Yes, Your Honor. We don't have anything other than really bad human rights conditions in Cambodia generally with regard to political opposition, people, protesters, criminals, things of that nature. And respondent at this point doesn't fall into those categories. He hasn't committed any crimes in Cambodia. He hasn't protested. He's not a member of the opposition. That to me seems like a full holistic analysis of the one source of potential harm that petitioner claimed. And an error arising from that sentence would be a factual error. So I'm looking at page 81. I don't see anything in the IJ's decision addressing Mr. Mythong's criminal record in the United States. I know he raised other claims that he then abandoned on appeal such as access to medical care for his cancer. But did he raise that argument that he has a criminal record in the United States and that that would be disclosed in Cambodia? Was that an argument that he made? No, Your Honor. No, Your Honor. Pages 131 and 133 of the record is where Mr. Mythong articulates the basis of his fear claim. He discusses his American beliefs and values and principles and his fear of someone overhearing him and reporting back to the government on those principles. And he fears that because of his Americanized identity, he might be targeted from the criminal record. There was, of course, discussion of it in the testimony, but that was not the basis of the claim. Nor is it the basis of the claim that petitioner raises in his opening brief, as he makes clear that the two categories he's generally contesting are the outsider status and the political beliefs. If Your Honors have no further questions, we do submit that this claim was fully and cumulatively considered and the IJ was not then required to articulate a separate aggregation analysis after the one feared source was fully considered. Thank you. Thank you, counsel. The government says that the IJ did not have to articulate the aggregation analysis standard. That reflects that the IJ wasn't even considering the aggregation rule. The IJ did not consider all of Mr. Mythong's risks underlying his risk of torture. That includes his criminal background because that also contributes to his overall risk of torture. Did you, so the government says that that was not raised below. Was it? Can you point to the record? Not outsider status. That's the, you know, they don't like people who come from the United States. He has an accent. He doesn't speak Cambodian well, but though specifically what Judge Schroeder was asking you about his criminal record here in the United States such that he would be considered a criminal in Cambodia. So that is just a subset of the aggregation error because the agency did not consider all of the risks and that is just one example of the risks. But was that risk presented to the agency is my question. Certainly. Mr. Mythong said that the agency erred because it did not answer or non-answer is that you're not pointing me to anywhere in the record where he made this specific argument that that so that the it's difficult to fault the IJ for not considering something that was not presented. And the specific argument was he committed a serious crime in the United States, spent a very long period of time in prison, and that that's a reason why he'd be considered a criminal in Cambodia and be in danger. The IJ affirmatively said he is not a criminal despite as the government concedes the testimony before the IJ that said he had been convicted of a crime. The IJ himself recognized that Mr. Mythong had spent almost three decades in prison. So this was he didn't say he was not a criminal. He said he hasn't committed any crimes in Cambodia. So is that a legal a factual error or is that a legal error in applying the in I'm not quite sure what to do with it. It's a legal error in the sense that he did not consider that risk which contributes the overall risk of torture. On the remedial question the government invokes the wrong legal standard. The government suggested that because the evidence here does not compel the conclusion that Mr. Mythong will face torture in Cambodia that that means remand is unwarranted. That is not the standard as the panel knows. The standard is whether it would be an idle and useless formality to remand this case. And here it would not be a useless formality because the IJ's opinion running through it is the incorrect notion that simply because individual risks are unlikely to transpire that means that torture is unlikely to transpire. That is wrong under Velasquez-Semillera and several other cases where this court has remanded for failure to apply the arrogation rule. And the government cites not a single case in which an arrogation error resulted in this court then wondering whether had the agency applied the correct arrogation standard the agency would have reached the same conclusion. And that makes a lot of sense because the Supreme Court in wages recently said that even if the court the Reverend Court suspects a significant likelihood that the agency will reach the same result on remand that is not enough. So given the agency's legal error here we would ask that the court vacate the agency's decision and remand so that the agency can apply the correct legal standard. All right thank you counsel. I also want to thank you and your co-counsel and R. Carrington and Sutcliffe for representing Mr. Mythong pro bono. Thank you. Thank you. Excellent argument both sides. Okay Mythong versus Bondi is submitted and we'll
judges: SCHROEDER, WARDLAW, BADE